MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
NEREO CUAHUA TETLACTLE (A/K/A
CESAR), PLACIDO XOCHIQUIQUISQUI
GARCIA, and SERGIO CUAHUA
MAYAHUA, *individually and on behalf of*
*others similarly situated,*

COMPLAINT

*Plaintiffs*,

**COLLECTIVE ACTION UNDER**<br>**29 U.S.C. § 216(b)**

-against-

**ECF Case**

KARPENISI REST. INC.  (D/B/A
MANHATTAN DINER), FOFIOS MILAS,
FOTIOS HILAS, FANIS TSIAMTSIOURIS,
ANGELO KANTLIS, JOHN DOE,
CANDIDO DOE, and TONY DOE,

*Defendants.*

-------------------------------------------------------X

Plaintiffs Nereo Cuahua Tetlactle (a/k/a Cesar), Placido Xochiquiquisqui Garcia, and

Sergio Cuahua Mayahua, individually and on behalf of others similarly situated (collectively,

"Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their

knowledge and belief, and as against Karpenisi Rest. Inc. (d/b/a Manhattan Diner), ("Defendant

Corporation"), Fofios Milas, Fotios Hilas, Fanis Tsiamtsiouris, Angelo Kantlis, John Doe,

Candido Doe, and  Tony Doe, ("Individual Defendants"), (collectively, "Defendants"), allege as

follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants Karpenisi Rest. Inc. (d/b/a Manhattan Diner), Fofios Milas, Fotios Hilas, Fanis Tsiamtsiouris, Angelo Kantlis, John Doe, Candido Doe, and Tony Doe.

2.      Defendants own, operate, or control a diner, located at 2532 Broadway New York, NY 10025 under the name "Manhattan Diner".

3.      Upon information and belief, individual Defendants Fofios Milas, Fotios Hilas, Fanis Tsiamtsiouris, Angelo Kantlis, John Doe, Candido Doe, and Tony Doe, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the restaurant as a joint or unified enterprise.

4.      Plaintiffs were employed as delivery workers at the restaurant located at 2532 Broadway, New York, New York 10025.

5.      Plaintiffs were ostensibly employed as delivery workers. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to assisting in the kitchen, cutting vegetables, preparing foods and sauces, taking out the trash, working as porters, dishwashing, bringing up products from the basement to the restaurant, cleaning the basement, the bathrooms, and the windows, sweeping and mopping, deconstructing and tying up boxes, preparing food stations, and stocking food in the refrigerators and the basement (hereafter the "non-tipped duties").

6.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

7.     Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.     Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

9.     Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

10.    Defendants employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

11.    However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

12.    Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them above the tip-credit rate, but below the minimum wage.

13.    Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

14.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

15.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

16.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

18.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a diner located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

### *Plaintiffs*

19.     Plaintiff Nereo Cuahua Tetlactle (a/k/a Cesar) ("Plaintiff Cuahua" or "Mr. Cuahua") is an adult individual residing in New York County, New York.

20.     Plaintiff Cuahua was employed by Defendants at Manhattan Diner from approximately July 2016 until on or about May 25, 2018.

21.     Plaintiff Placido Xochiquiquisqui Garcia ("Plaintiff Xochiquiquisqui" or "Mr. Xochiquiquisqui") is an adult individual residing in New York County, New York.

22.     Plaintiff Xochiquiquisqui was employed by Defendants at Manhattan Diner from approximately September 15, 2015 until on or about May 25, 2018.

23.     Plaintiff Sergio Cuahua Mayahua ("Plaintiff Cuahua" or "Mr. Cuahua") is an adult individual residing in New York County, New York.

24.     Plaintiff Cuahua was employed by Defendants at Manhattan Diner from approximately April 2017 until on or about May 26, 2018.

*Defendants*

25.     At all relevant times, Defendants owned, operated, or controlled a diner, located at 2532 Broadway New York, New York 10025 under the name "Manhattan Diner".

26.     Upon information and belief, Karpenisi Rest. Inc. (d/b/a Manhattan Diner) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 2532 Broadway New York, NY 10025.

27.     Defendant Fofios Milas is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Fofios Milas is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Fofios Milas possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages

and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

28.    Defendant Fotios Hilas is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Fotios Hilas is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Fotios Hilas possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

29.    Defendant Fanis Tsiamtsiouris is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Fanis Tsiamtsiouris is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Fanis Tsiamtsiouris possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

30.    Defendant Angelo Kantlis is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Angelo Kantlis is sued individually in his capacity as a manager of Defendant Corporation. Defendant Angelo Kantlis possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants,

including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

31.     Defendant John Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant John Doe is sued individually in his capacity as a manager of Defendant Corporation. Defendant John Doe possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

32.     Defendant Candido Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Candido Doe is sued individually in his capacity as a manager of Defendant Corporation. Defendant Candido Doe possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

33.     Defendant Tony Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Tony Doe is sued individually in his capacity as a manager of Defendant Corporation. Defendant Tony Doe possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

34.     Defendants operate a diner located in the Upper West Side section of Manhattan in New York City.

35.     Individual Defendants, Fofios Milas, Fotios Hilas, Fanis Tsiamtsiouris, Angelo Kantlis, John Doe, Candido Doe, and Tony Doe, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, or control significant functions of Defendant Corporation.

36.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

37.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

38.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

39.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

40.     Upon information and belief, Individual Defendants Fofios Milas, Fotios Hilas, and Fanis Tsiamtsiouris operate Defendant Corporation as either an alter ego of themselves and/or failed to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

   a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

   b)  defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

   c)  transferring assets and debts freely as between all Defendants,

   d)  operating Defendant Corporation for their own benefit as the sole or majority shareholders,

   e)  operating Defendant Corporation for their own benefit and maintaining control over this corporation as a closed Corporation,

   f)  intermingling assets and debts of their own with Defendant Corporation,

   g)  diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

   h)  Other actions evincing a failure to adhere to the corporate form.

41.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

42.    In each year from 2015 to 2018, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

43.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

## *Individual Plaintiffs*

44.     Plaintiffs are former employees of Defendants who ostensibly were employed as delivery workers. However, they spent over 20% of each shift performing the non-tipped duties described above.

45.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

## *Plaintiff Nereo Cuahua Tetlactle*

46.     Plaintiff Cuahua was employed by Defendants from approximately July 2016 until on or about May 25, 2018.

47.     Defendants ostensibly employed Plaintiff Cuahua as a delivery worker.

48.     However, Plaintiff Cuahua was also required to spend a significant portion of his work day performing the non-tipped duties described above.

49.     Although Plaintiff Cuahua ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

50.     Plaintiff Cuahua regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

51.     Plaintiff Cuahua's work duties required neither discretion nor independent judgment.

52.     Throughout his employment with Defendants, Plaintiff Cuahua regularly worked in excess of 40 hours per week.

53.     From approximately July 2016 until on or about October 2017, Plaintiff Cuahua worked from approximately 12:00 p.m. until on or about 8:00 p.m. to 9:00 p.m., two days a week and from approximately 4:00 p.m. until on or about 1:00 a.m. to 2:00 a.m., three days a week (typically 43 to 48 hours per week).

54.     From approximately November 2017 until on or about December 2017, Plaintiff Cuahua worked from approximately 6:00 p.m. until on or about 3:00 a.m., five days a week (typically 45 hours per week).

55.     From approximately July 2016 until on or about May 2017, Defendants paid Plaintiff Cuahua his wages in cash.

56.     From approximately June 2017 until on or about May 2018, Defendants paid Plaintiff Cuahua his wages by check.

57.     From approximately July 2016 until on or about June 2017, Defendants paid Plaintiff Cuahua $9.00 per hour.

58.     From approximately July 2017 until on or about December 2017, Defendants paid Plaintiff Cuahua $11.00 per hour.

59.     Plaintiff Cuahua's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

60.     For example, Defendants required Plaintiff Cuahua to work one hour to one hour and twenty minutes past his scheduled departure time three days a week and did not pay him for the additional time he worked.

61.     Defendants never granted Plaintiff Cuahua any breaks or meal periods of any kind.

62.     Nevertheless, Defendants deducted approximately $4 a week from Plaintiff Cuahua's weekly paycheck for meals he never ate.

63.     Plaintiff Cuahua was never notified by Defendants that his tips were being included as an offset for wages.

64.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Cuahua's wages.

65.     On a number of occasions, Defendants required Plaintiff Cuahua to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

66.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Cuahua regarding overtime and wages under the FLSA and NYLL.

67.     Defendants did not provide Plaintiff Cuahua an accurate statement of wages, as required by NYLL 195(3).

68.     Defendants did not give any notice to Plaintiff Cuahua, in English and in Spanish (Plaintiff Cuahua's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

69.     Defendants required Plaintiff Cuahua to purchase "tools of the trade" with his own funds—including a bicycle, a helmet, the restaurant identification card, and bicycle repairs.

*Plaintiff Placido Xochiquiquisqui Garcia*

70.     Plaintiff Xochiquiquisqui was employed by Defendants from approximately September 15, 2015 until on or about May 25, 2018.

71.     Defendants ostensibly employed Plaintiff Xochiquiquisqui as a delivery worker.

72.     However, Plaintiff Xochiquiquisqui was also required to spend a significant portion of his work day performing the non-tipped duties described above.

73. Although Plaintiff Xochiquiquisqui ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

74. Plaintiff Xochiquiquisqui regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

75. Plaintiff Xochiquiquisqui's work duties required neither discretion nor independent judgment.

76. Throughout his employment with Defendants, Plaintiff Xochiquiquisqui regularly worked in excess of 40 hours per week.

77. From approximately September 15, 2015 until on or about December 2017, Plaintiff Xochiquiquisqui worked from approximately 3:00 p.m. to 4:00 p.m. until on or about 2:00 a.m., six days a week (typically 60 to 66 hours per week).

78. From approximately January 2018 until on or about May 25, 2018, Plaintiff Xochiquiquisqui worked from approximately 4:00 p.m. until on or about 12:00 a.m., three days a week and from approximately 4:00 p.m. until on or about 2:00 a.m., two days a week (typically 44 hours per week).

79. From approximately September 2015 until on or about May 2017, Defendants paid Plaintiff Xochiquiquisqui his wages in cash.

80. From approximately June 2017 until on or about May 25, 2018, Defendants paid Plaintiff Xochiquiquisqui his wages by check.

81. From approximately September 2015 until on or about December 2017, Defendants paid Plaintiff Xochiquiquisqui $9.00 per hour.

82.     From approximately January 2018 until on or about May 25, 2018, Defendants paid Plaintiff Xochiquiquisqui $13.00 per hour.

83.     Plaintiff Xochiquiquisqui's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

84.     For example, Defendants required Plaintiff Xochiquiquisqui to work an additional 1 hour to 2 hours past his scheduled departure time every day and did not pay him for the additional time he worked.

85.     Defendants never granted Plaintiff Xochiquiquisqui any breaks or meal periods of any kind.

86.     Plaintiff Xochiquiquisqui was never notified by Defendants that his tips were being included as an offset for wages.

87.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Xochiquiquisqui's wages.

88.     Plaintiff Xochiquiquisqui was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

89.     Although Plaintiff Xochiquiquisqui was required to keep track of his time, Defendants required him to record fewer hours than he actually worked. As a result, Plaintiff Xochiquiquisqui was not compensated for all of the hours that he worked.

90.     On a number of occasions, Defendants required Plaintiff Xochiquiquisqui to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

91.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Xochiquiquisqui regarding overtime and wages under the FLSA and NYLL.

92.     Defendants did not provide Plaintiff Xochiquiquisqui an accurate statement of wages, as required by NYLL 195(3).

93.     In fact, Defendants adjusted Plaintiff Xochiquiquisqui's paystubs so that they reflected inaccurate wages and hours worked.

94.     Defendants did not give any notice to Plaintiff Xochiquiquisqui, in English and in Spanish (Plaintiff Xochiquiquisqui's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

95.     Defendants required Plaintiff Xochiquiquisqui to purchase "tools of the trade" with his own funds—including one bicycle, one helmet, a vest, and bicycle maintenance.

*Plaintiff Sergio Cuahua Mayahua*

96.     Plaintiff Cuahua was employed by Defendants from approximately April 2017 until on or about May 26, 2018.

97.     Defendants ostensibly employed Plaintiff Cuahua as a delivery worker.

98.     However, Plaintiff Cuahua was also required to spend a significant portion of his work day performing the non-tipped duties described above.

99.     Although Plaintiff Cuahua ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

100.    Plaintiff Cuahua regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

101.    Plaintiff Cuahua's work duties required neither discretion nor independent judgment.

102.    Throughout his employment with Defendants, Plaintiff Cuahua regularly worked in excess of 40 hours per week.

103.    From approximately April 2017 until on or about December 2017, Plaintiff Cuahua worked from approximately 3:00 p.m. until on or about 12:00 a.m., two days a week and from approximately 3:00 p.m. until on or about 11:00 p.m., four days a week (typically 50 hours per week).

104.    From approximately April 2017 until on or about December 2017, Defendants paid Plaintiff Cuahua his wages in cash.

105.    From approximately April 2017 until on or about December 2017, Defendants paid Plaintiff Cuahua $9.00 per hour.

106.    Plaintiff Cuahua's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

107.    For example, Defendants required Plaintiff Cuahua to work an additional one hour past his scheduled departure time two days a week and did not pay him for the additional time he worked.

108.    Defendants never granted Plaintiff Cuahua any breaks or meal periods of any kind.

109.    Plaintiff Cuahua was never notified by Defendants that his tips were being included as an offset for wages.

110.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Cuahua's wages.

111.    On a number of occasions, Defendants required Plaintiff Cuahua to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

112.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Cuahua regarding overtime and wages under the FLSA and NYLL.

113.     Defendants did not provide Plaintiff Cuahua an accurate statement of wages, as required by NYLL 195(3).

114.     Defendants did not give any notice to Plaintiff Cuahua, in English and in Spanish (Plaintiff Cuahua's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

115.     Defendants required Plaintiff Cuahua to purchase "tools of the trade" with his own funds—including one electric bicycle, a helmet, a chain and a lock, a vest, and bicycle maintenance.

*Defendants' General Employment Practices*

116.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

117.     Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

118.     Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

119.     Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

120.    Defendants required Plaintiffs and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

121.    These Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

122.     The Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

123.    These Plaintiffs and all other tipped workers were paid at a rate that was below minimum wage by Defendants.

124.    However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and these Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

125.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

126.    In violation of federal and state law as codified above, Defendants classified these Plaintiffs and other tipped workers as tipped employees and paid them at a rate that was below minimum wage when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

127.    Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

128.    Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

129.    Defendants failed to maintain a record of tips earned by Plaintiffs who worked as delivery workers for the tips they received. Defendants' time keeping system did not reflect the actual hours that Plaintiff Cuahua worked.

130.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

131.    On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail. Prior to May 2017, Defendants paid Plaintiffs their wages in cash. After May 2017, Defendants paid Plaintiffs their wages by check.

132.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

133.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

134.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

135.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

136.    Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

137.    Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

138.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

139.     At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

140.     The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

141.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

142.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

143.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

144.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

145.     Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

146.     Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

147.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

### SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

148.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

149.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

150.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

151.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

152.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

153.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

154.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

155.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

156.     Plaintiffs were damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS

### OF THE NEW YORK STATE LABOR LAW

157.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

158.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

159.     Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

160.     Plaintiffs were damaged in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION

### VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

### OF THE NEW YORK COMMISSIONER OF LABOR

161.     Plaintiff Xochiquiquisqui repeats and realleges all paragraphs above as though fully set forth herein.

162.     Defendants failed to pay Plaintiff Xochiquiquisqui one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiff Xochiquiquisqui's spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

163.     Defendants' failure to pay Plaintiff Xochiquiquisqui an additional hour's pay for each day Plaintiff Xochiquiquisqui's spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

164.     Plaintiff Xochiquiquisqui was damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

165.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

166.     Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

167.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

168.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

169.     With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular

hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

170.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

171.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

172.     Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

173.     Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION

## OF THE NEW YORK LABOR LAW

174.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

175.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

176.     Defendants made unlawful deductions from Plaintiffs' wages including, but not limited to, deductions for meals they never ate.

177.     The deductions made from Plaintiffs' wages were not authorized or required by law.

178.     Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

Plaintiffs were damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

## VIOLATION OF THE TIMELY PAYMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

179.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

180.     Defendants did not pay Plaintiffs on a regular weekly basis, in violation of NYLL §191.

181.     Defendants are liable to each Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)　　Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)　　Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)　　Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)　　Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)　　Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)　　Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)　　Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)　　Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(l)　　Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(m)    Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(n)    Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(o)    Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)    Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)    Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(r)    Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(s)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)    All such other and further relief as the Court deems just and proper.

## <u>JURY DEMAND</u>

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York

October 18, 2018

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:        /s/ Michael Faillace
           Michael Faillace [MF-8436]
           60 East 42nd Street, Suite 4510
           New York, New York 10165
           Telephone: (212) 317-1200
           Facsimile: (212) 317-1620
           *Attorneys for Plaintiffs*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

| | |
|---|---|
| One Grand Central Place | Telephone: (212) 317-1200 |
| 60 E 42nd Street, Suite 4510 | Facsimile: (212) 317-1620 |
| New York, New York 10165 | Email: Faillace@employmentcompliance.com |

May 30, 2018

BY HAND

To: Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. (Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes).

Name / Nombre:                    Nereo Cuahua Tetlactle

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:               Nereo Cuahua Tetlactle

Date / Fecha:                    May 30, 2018

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

May 30, 2018

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Placido Xochiquiquisqui  Garcia

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     30 de Mayo del 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

May 30, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                      Sergio Cuahua Mayahua

Michael Faillace & Associates, P.C.

Legal Representative / Abogado:

Signature / Firma:

Date / Fecha:                       30 de mayo de 2018

*Certified as a minority-owned business in the State of New York*